EDMUND G. BROWN JR. Attorney General SUSAN DUNCAN LEE Supervising Deputy Attorney General
THE PRISON INDUSTRY BOARD has requested an opinion on the following question:
May the Prison Industry Board create a personnel system separate from the state's civil service system for all employees working in enterprises under the jurisdiction of the Prison Industry Authority?
 CONCLUSION
The Prison Industry Board may create a personnel system separate from the state's civil service system when there is specific evidence justifying the departure from the constitutional civil service system. In addition, or as an alternative, the Board may fill individual positions by using personal services contracts where justified by circumstances, without creating an entirely new system separate from the civil service system. *Page 2 
 ANALYSIS
The Prison Industry Authority (Authority) is a state agency operating under the auspices of the Department of Corrections and Rehabilitation. Its purpose is to develop and run industrial, agricultural, and service enterprises that are modeled on business practices in the private sector, while providing training and employment opportunities for prison inmates.[1] The Authority is intended to be a self-supporting organization, relying on revenues from its sale of products and services.[2]
The Authority is administered by an 11-member Prison Industry Board (Board) which, with some exceptions, has "all of the powers and [does] all of the things that the board of directors of a private corporation would do. . . ."[3] The question posed here concerns whether, in employment and personnel matters, the Board and the Authority *Page 3 
may operate outside civil service rules. We conclude that they may do so to the extent that facts and circumstances justify a departure from the civil service rules.
The key statute requiring our analysis is Penal Code section 2809, which grants to the Authority certain powers with respect to employment matters:
 Notwithstanding any other provision of law, commencing July 1, 2005, the authority may recruit and employ civilian staff that may be necessary to carry out the purposes of this article, and shall establish recruiting, testing, hiring, promotion, disciplinary, and dismissal procedures and practices which will meet the unique personnel needs of the authority. The practices may include incentives based on productivity, profit-sharing plans, or other criteria which will encourage civilian employee involvement in the productivity goals of the authority. The procedures and practices shall apply to all employees working in enterprises under the jurisdiction of the authority. The general manager shall be the appointing authority for all personnel of the authority other than the general manager.
The employees in question are the approximately 700 non-prisoner employees who supervise, manage, and operate the training program for approximately 6,000 prison inmates. In this opinion, we are called upon to analyze the extent to which section 2809 permits the Board to operate outside of civil service rules.
Generally speaking, the state civil service system encompasses every state employee and officer except those who qualify under an exemption provided in the state Constitution.[4] These exemptions are contained in article VII, section 4 of the Constitution.[5] While prison inmates are exempt from civil service requirements, [6] no *Page 4 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 5 
express exemption applies to the Authority's non-prisoner employees.
In Professional Engineers in California Government v. Kempton, the Supreme Court of California noted that courts have recognized three additional exceptions to civil service rules.[7] The first exception, called the "nature of the services" rule, flows from the premise that if the services to be contracted for are of such a nature that they could be performed by an existing civil service employee, then the employing power must procure those services under civil service rules.[8] If the services to be contracted for are not of such a nature, however, then the exception applies and the services may be contracted for outside of civil service rules.[9]
The second exception, the "new state function" rule, holds that civil service restrictions are inapplicable when the state wishes to contract for private services "`to perform new functions not previously undertaken by the state or covered by an existing department or agency.'"[10]
The third exception is the "cost savings exception." A statute that allows the state to contract with private entities in order to achieve cost savings is permissible if, pursuant to the statute, the state "`can achieve these savings without ignoring other applicable civil service requirements (e.g., use of publicized, competitive bidding, no undercutting of state pay rates, no displacement of state workers or infringement of affirmative action plans, and no overriding public interest in having the state perform the function).'"[11] *Page 6 
The statutory scheme governing the civil service system[12] includes Government Code section 19130 (which has been upheld as consistent with article VII of the Constitution), which "essentially codifies and interprets the `cost savings,' `new state function,' and `nature of the services' tests of the decisional law . . ., as applied to [personal service] contracts."[13] Government Code section 19130 sets forth circumstances under which a private service contract is permissible.[14] *Page 7 
Our task is to put these elements together and consider the meaning and effect of section 2809 in light of article VII and Government Code section 19130, as well as judicial precedent. When interpreting a statute, our fundamental task "is to determine the Legislature's intent so as to effectuate the law's purpose."[15] We begin our analysis by examining the words used by the Legislature, giving them their usual and ordinary meaning.[16] "We do not construe statutory language in isolation, but rather as a thread in *Page 8 
the fabric of the entire statutory scheme of which it is a part."[17]
The recognized exceptions to the civil service mandate would allow the Authority to engage private contractors to do work that constituted a new state function, or involved services not available within the civilservice.[18] However, upon analyzing the language of section 2809 and its context, we believe that the scope of the civil service exceptions meant to be carved out by section 2809 is not closely tailored enough to the Authority's unique personnel needs to justify a complete departure from civil service rules for all of the Authority's non-prisoner employees.
Starting with its plain language, we note that section 2809 does not speak of authorizing individual contracts for the Authority's special needs or limited purposes. Instead, the statute was intended to authorize the Authority to establish non-civil service employment and pay practices, and to apply those practices "to all employees working in enterprises under the jurisdiction of the authority."[19] Section 2809 thus appears to be designed to create an exemption for the whole prison industries enterprise as a whole. Indeed, our review of the legislative history of section 2809 confirms our understanding that this was the Legislature's intent.[20] *Page 9 
As a general rule, "the civil service mandate does not readily lend itself to broad legislative exemptions."[21] Rather, exemptions are usually examined on a case-by-case basis, "evaluating particular contracts rather than entire areas of operation."[22] Because the civil service mandate is embodied in the state's Constitution, the Legislature may not override it in the absence of reasonable findings supported by substantial evidence.[23] If the Legislature wishes to make exceptions to the civil service mandate, it must support such an effort with specific factual findings.[24] And, in a case like this, the Legislature would need to make findings sufficient to justify an exception for the entire enterprise in order to carry out its intent to exempt the entire enterprise. However exemplary a legislative purpose or objective may be, without supportive findings it "does not afford a proper ground for noncompliance with the civil service mandate."[25]
The extent to which section 2809 may be given effect therefore turns on whether it "contain[s] factually supported findings that would excuse noncompliance with the civil service mandate."[26] Here, the only legislative findings we have found appear in uncodified provisions of the legislation that enacted section 2809. Section 2 of chapter 1549 of the statutes of 1982 includes the following declarations:
The Legislature finds and declares that: *Page 10 
 (a) The present prison industries program has failed to provide productive jobs to prisoners, to meaningfully offset the cost of running the prison system, or to reduce the idleness and underemployment which are rampant in California's prisons.
 (b) The constraints of state government severely impede the ability of the prison industries program to operate on a self-supporting or profit-making basis.
 (c) A successful prison industries program can best be accomplished by providing the management of the prison industries program with a reasonable degree of autonomy and by establishing a special authority to manage and operate prison industries and the funds associated with such programs.[27]
These declarations appear to us to be substantially similar to findings that have been considered and rejected by the Supreme Court as a basis for previous departures from the civil service system.[28] We have found no references to reports, studies, statistics, or other data concerning problems in Prison Industries operations.[29] Without the requisite factual findings, we believe that a court would be compelled to conclude that section 2809 in itself is insufficient to justify a complete departure from civil service standards for all 700-some non-prisoner employees of the Prison Industries Authority.
Consequently, we believe that section 2809 is not sufficient to authorize the Board to disregard the civil service mandate, or to create its own separate and independent personnel system, for all of its non-prisoner employees. To the extent that it purports to do so, section 2809, like the statutes considered in Professional Engineers v.Department of Transportation, "represents an invalid or ineffectual attempt to circumvent that constitutional mandate."[30]
Of course, the Prison Industry Board remains free to justify exceptions to the civil *Page 11 
service. It might be helpful, for example, to present the Legislature with any reports or analyses providing statistics or specific examples showing why prison industries needs more flexibility in hiring and termination processes, as well as the projected benefits of pay and reward structures such as profit sharing and pay-for-performance standards. Parole personnel might be called on to explain the need for prison job programs that more closely replicate free-world employment conditions. It might be helpful to study programs in state government that operate outside the civil service system (such as EdFund), as well as successful self-sustaining or profit-making job programs used in other states. Concrete information in these and other forms would go far toward helping the Legislature make the kinds of fact-based findings necessary to justify the civil-service departures that have been envisioned for prison industries programs.
In addition, the Board is free at any time to work with the State Personnel Board and the Department of Personnel Administration to develop personnel practices that are consistent with existing civil service, yet meet the Board's particular needs. The State Personnel Board has the authority to adopt and revise job classifications, and to approve the creation of new positions exempt from civil service.[31] The Department of Personnel Administration is the agency responsible for analyzing the duties and requirements for state job classifications, allocating positions to the appropriate civil service classification, and establishing pay levels for those positions.[32] As such, the Department of Personnel Administration works closely with the state's employing departments to prepare and submit classification proposals for the State Personnel Board's approval.[33] Therefore, as a first step toward justifying future departures from civil service rules, the Prison Industry Board may wish to call upon the advice and experience of Department of Personnel Administration staff, which has experience in assessing job requirements, recruitment and retention challenges, salary ranges and differentials, needs for temporary consultants, and related measures.
Finally, we note that the Board remains free to fill individual positions, on a job-by-job or position-by-position basis, by using independent personal services contracts *Page 12 
when permissible.[34] Personal services contracting is permissible, for example, when the services needed cannot be performed satisfactorily by civil service employees, or are of such a specialized nature that the necessary expertise, experience, or ability are not available through the civil service system.[35]
We conclude that the Prison Industry Board may create a personnel system separate from the state's civil service system when there is specific evidence justifying the departure from the constitutional civil service system. In addition, or as an alternative, the Board may fill individual positions by using personal services contracts where justified by circumstances, without creating an entirely new system separate from the civil service system.
[1] Penal Code section 2801 provides:
The purposes of the authority are:
 (a) To develop and operate industrial, agricultural, and service enterprises employing prisoners in institutions under the jurisdiction of the Department of Corrections, which enterprises may be located either within those institutions or elsewhere, all as may be determined by the authority.
 (b) To create and maintain working conditions within the enterprises as much like those which prevail in private industry as possible, to assure prisoners employed therein the opportunity to work productively, to earn funds, and to acquire or improve effective work habits and occupational skills.
 (c) To operate a work program for prisoners which will ultimately be self-supporting by generating sufficient funds from the sale of products and services to pay all the expenses of the program, and one which will provide goods and services which are or will be used by the Department of Corrections, thereby reducing the cost of its operation.
See also Penal Code §§ 2805, 2807; 89 Ops.Cal.Atty.Gen. 187 (2006).
[2] Penal Code § 2801(c).
[3] Penal Code § 2808.
[4] Cal. Const. art. VII, § 1; see Prof. Engrs. v. Dept. of Transp.,15 Cal. 4th 543, 548 (1997); Cal. State Employees' Assn. v. Williams,7 Cal. 3d 390, 395 (1970); 82 Ops.Cal.Atty.Gen. 206, 208-214 (1999);67 Ops.Cal.Atty.Gen. 27, 28 (1984); 65 Ops.Cal.Atty.Gen. 475, 479-480
(1982).
[5] Article VII, section 4 provides:
The following are exempt from civil service:
 (a) Officers and employees appointed or employed by the Legislature, either house, or legislative committees.
 (b) Officers and employees appointed or employed by councils, commissions or public corporations in the judicial branch or by a court of record or officer thereof.
 (c) Officers elected by the people and a deputy and an employee selected by each elected officer.
 (d) Members of boards and commissions.
 (e) A deputy or employee selected by each board or commission either appointed by the Governor or authorized by statute.
 (f) State officers directly appointed by the Governor with or without the consent or confirmation of the Senate and the employees of the Governor's office, and the employees of the Lieutenant Governor's office directly appointed or employed by the Lieutenant Governor.
 (g) A deputy or employee selected by each officer, except members of boards and commissions, exempted under Section 4(f).
 (h) Officers and employees of the University of California and the California State Colleges.
 (i) The teaching staff of schools under the jurisdiction of the Department of Education or the Superintendent of Public Instruction.
 (j) Member, inmate, and patient help in state homes, charitable or correctional institutions, and state facilities for mentally ill or retarded persons.
 (k) Members of the militia while engaged in military service.
 (l) Officers and employees of district agricultural associations employed less than 6 months in a calendar year.
 (m) In addition to positions exempted by other provisions of this section, the Attorney General may appoint or employ six deputies or employees, the Public Utilities Commission may appoint or employ one deputy or employee, and the Legislative Counsel may appoint or employ two deputies or employees.
[6] Cal. Const. art. VII, § 4(j).
[7] 40 Cal. 4th 1016, 1033-1034 (2007).
[8] 40 Cal. 4th at 1033 (citing State Compensation Ins. Fund v.Riley, 9 Cal. 2d 126, 135) (1937).
[9] 40 Cal. 4th at 1033. See Cal. State Employees' Assn. v. Williams,7 Cal. App. 3d at 397 ("[I]f the services cannot be adequately rendered by an existing agency of the public entity . . . the contract is permissible.")
[10] 40 Cal. 4th at 1033 (quoting Prof. Engrs. v. Dept. of Transp.,15 Cal. 4th at 549). See Cal. State Employees' Assn. v. Williams,7 Cal. App. 3d at 399 ("[T]he state civil service suffers no displacement and the underlying constitutional policy is not offended when a new state activity is conducted by contract with a separate public or private entity.")
[11] 40 Cal. 4th at 1033-1034 (quoting Prof. Engrs. v. Dept. ofTransp., 15 Cal. 4th at 549).
[12] See generally Govt. Code §§ 18500-19799.
[13] Prof. Engrs. v. Dept. of Transp., 15 Cal. 4th at 552.
[14] Subdivision (b) of Government Code section 19130 provides as follows:
 Personal services contracting also shall be permissible when any of the following conditions can be met:
 (1) The functions contracted are exempted from civil service by Section 4 of Article VII of the California Constitution, which describes exempt appointments.
 (2) The contract is for a new state function and the Legislature has specifically mandated or authorized the performance of the work by independent contractors.
 (3) The services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experience, and ability are not available through the civil service system.
 (4) The services are incidental to a contract for the purchase or lease of real or personal property. Contracts under this criterion, known as "service agreements," shall include, but not be limited to, agreements to service or maintain office equipment or computers that are leased or rented.
 (5) The legislative, administrative, or legal goals and purposes cannot be accomplished through the utilization of persons selected pursuant to the regular civil service system. Contracts are permissible under this criterion to protect against a conflict of interest or to insure independent and unbiased findings in cases where there is a clear need for a different, outside perspective. These contracts shall include, but not be limited to, obtaining expert witnesses in litigation.
 (6) The nature of the work is such that the Government Code standards for emergency appointments apply. These contracts shall conform with Article 8 (commencing with Section 19888) of Chapter 2.5 of Part 2.6.
 (7) State agencies need private counsel because a conflict of interest on the part of the Attorney General's office prevents it from representing the agency without compromising its position. These contracts shall require the written consent of the Attorney General, pursuant to Section 11040.
 (8) The contractor will provide equipment, materials, facilities, or support services that could not feasibly be provided by the state in the location where the services are to be performed.
 (9) The contractor will conduct training courses for which appropriately qualified civil service instructors are not available, provided that permanent instructor positions in academies or similar settings shall be filled through civil service appointment.
 (10) The services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate their very purpose.
Subdivision (a), which, concerns the "cost savings" exception, is not germane to our discussion. See 82 Ops.Cal.Atty.Gen. at 212-213.
[15] People v. Murphy, 25 Cal. 4th 136, 142 (2001) .
[16] Garcia v. McCutchen, 16 Cal. 4th 469, 476 (1997); Kimmel v.Goland, 51 Cal. 3d 202, 208-209 (1990).
[17] Dept. of Alcoholic Bev. Control v. Alcoholic Bev. Control AppealsBd., 40 Cal. 4th 1, 11 (2006); see Carrisales v. Dept. of Corrections,21 Cal. 4th 1132, 1135 (1999); Cal. Teachers Assn. v. Governing Bd. ofRialto Unified Sch. Dist., 14 Cal. 4th 627, 642 (1997).
[18] Govt. Code § 19130(b)(2), (3). Cost savings has not been proposed as a potential justification for section 2809's ostensible departure from civil service rules.
[19] Italics added.
[20] The Legislative Analyst described the proposed legislation as effecting the following change in the industries and vocational training program previously administered by the Department of Corrections:
 Exempts all civilian employees of the industries program from civil service. The industries organization would establish its own recruiting, testing, hiring, promotion, disciplinary, and dismissal procedures. The Director of Corrections would be the appointing authority.
Leg. Analyst, analysis of Assembly 2955 (1981-1982 Reg. Sess.) as amend. June 24, 1982, at 2. See also Assembly Off. of Research, 3d reading analysis of Sen. 1574 (1981-1982 Reg. Sess.) as amend. Aug. 30, 1982, p. 2 (same).
[21] Prof. Engrs. v. Dept. of Transp., 15 Cal. 4th at 574.
[22] Id.
[23] See Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 666
(1994) (lead opn. of Kennedy, J.); Amwest Sur. Ins. Co. v. Wilson,11 Cal. 4th 1243, 1252 (1995); see also Spiritual Psychic Science Churchv. City of Azusa, 39 Cal. 3d 501, 514 (1985) (ordinary deference owed to legislative action disappears when constitutionally protected rights are threatened).
[24] Prof. Engrs. v. Dept. of Transp., 15 Cal. 4th at 568-573. Although exceptions are ordinarily justified on a narrow, contract-by-contract basis rather than on a broader scale, id. at 574, we do not go so far as to conclude that a program-wide exception could never be justified, given proper findings.
[25] Id. at 571.
[26] Prof. Engrs. v. Dept. of Transp., 15 Cal. 4th at 569.
[27] See also Stats. 1982, ch. 1549, § 3.
[28] See id. at 568-574 ("Most provisions of Chapter 433 appear intended to dispense with, rather than to satisfy, the constitutional civil service mandate.").
[29] Cf. id. at 573.
[30] Id. at 548.
[31] Cal. Const. art. VII, §§ 2, 3; Govt. Code §§ 18702, 18710; seeState Personnel Bd. v. Dept. of Personnel Admin., 37 Cal. 4th 512, 526-527
(2005) (under Constitution, non-partisan State Personnel Board has sole authority to administer state's civil service system.)
[32] Govt. Code §§ 19816, 19818.6.
[33] Id. at §§ 19818.10-19818.14.
[34] Govt. Code § 19130.
[35] Id. at § 19130(b)(3). *Page 1